UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RODRECIUS ANTONIO HAMILTON,

      Plaintiff,                               CASE NO.:  8:18-cv-885-T-02TGW

v.

OFFICER JEREMY WILLIAMS, OFFICER
JUSTIN KING, AND OFFICER JOEL
MAILLY.

      Defendants.
_____/

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND INCORPORATED MEMORANDUM OF LAW**

Defendants Jeremy Williams, Justin King, and Joel Mailly, pursuant to Fed. R. Civ. P. 56, move for summary judgment on the Second Amended Complaint for Violation of Civil Rights filed by Plaintiff, Rodrecius Antonio Hamilton, and state as follows:

I.    **Statement of Material Facts for Purposes of Summary Judgment**

Defendants incorporate by reference the separately filed Statement of Material Facts filed contemporaneously with this Motion, pursuant to this Court's written preferences.

II.    **Memorandum of Law: The individual Defendants are entitled to qualified immunity on Plaintiff's claims under 42 U.S.C. §1983**

    A.    **Standard for Summary Judgment**

To prevail on their Motion for Summary Judgment, Defendants must demonstrate that there are no genuine issues as to any material fact, as "[s]ummary Judgment is appropriate if the record gives rise to 'no genuine dispute as to any material fact,' such that 'the movant is entitled to judgment as a matter of law.'" *Hutchinson v. Secretary, Dept. of Veterans Affairs,* 766

1

Fed.Appx. 883, 886 (11th Cir. 2019) (quoting Fed. R. Civ P. 56(a)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

    **B.**    **Overview of Plaintiffs' Claims and Defendants' Defenses**

In his Second Amended Complaint, Plaintiff asserts claims against only the individual Officers for violations of the Fourth and Fourteenth Amendments, specifically, for "unreasonable search and seizure" and for excessive force. (Doc. 17 at 3). Plaintiff alleges in his Second Amended Complaint that the individual Officers came upon his private property "to investigate a misdemeanor battery which allegedly occurred the day prior," and that Plaintiff fled inside his home when he saw the officers approach because he was afraid and did not know Defendants were law enforcement officers. (Doc. 17 at 4).

With respect to Officer Williams, Plaintiff alleges "Defendant Williams illegally enter[ed] the Plaintiff's property without an arrest or search warrant" and that Defendant Williams "released his K-9 and the Plaintiff was attacked by Defendant Williams' dog." (Doc. 17 at 4). He further alleges Defendant Williams "used excessive force on the Plaintiff by kicking him several times in the ribs and legs" and that Defendants Williams "kicked through the door of the Plaintiff's home without a warrant and there existed no exigent circumstances to justify such conduct," nor did he give Defendant Williams permission to enter his home. (Doc. 17 at 7).

As to Defendant Mailly, Plaintiff contends he was involved with other Lakeland Police Department Officers in "sneaking" up on Plaintiff's home and that Defendant Mailly "illegally enter[ed] the Plaintiff's property without a warrant, us[ed] excessive force on Plaintiff, violat[ed] the Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments, and caus[ed] other damages." (Doc. 17 at 5-6). He similarly alleges Defendant Mailly entered his property

and home without a warrant and kicked and beat him, which caused him to sustain bruises. (Doc. 17 at 8).

Finally, with respect to Officer King, Plaintiff alleges he, too, was involved with other Lakeland Police Department Officers in "sneaking" up on Plaintiff's home and that Defendant King "enter[ed] the Plaintiff's property and home without a warrant, … beat[] the Plaintiff, and caus[ed] physical and emotional harm, and…us[ed] unnecessary force against the Plaintiff." (Doc. 17 at 6-7). He also alleges Defendant King entered his property and home without a warrant, "assisted the other named Defendant's in battering the Plaintiff, and that Defendant King "kicked and beat[]" him, which caused him to sustain bruises. (Doc. 17 at 8).

Defendants assert that they are entitled to qualified immunity as to Plaintiff's claims. There is no dispute that Plaintiff was arrested in his home on April 19, 2016 without a warrant. However, Defendants assert that exigent circumstances existed that permitted Defendant Williams to enter Plaintiff's home to arrest him without a warrant. Further, Defendant Mailly asserts he was not present at the scene of the arrest on April 19, 2016, and Defendant King asserts that he did not enter Plaintiff's home to arrest him or subject him to excessive force. (Statement of Material Facts ¶¶7, 27-28 31-33; Mailly Aff. ¶10; Williams Aff. ¶¶10, 15; King Aff. ¶¶ 7-9, 14).[1]

C.  **Qualified Immunity Standard**

"Qualified immunity shields a law enforcement officer who is sued in his individual capacity for alleged federal constitutional violations that may arise during the performance of discretionary functions." *Hazelton v. City of Orlando*, Case No.: 6:10-cv-342-Orl-35-DAB, 2011 WL 13175527 * 3 (M.D. Fla. 2011). "Qualified immunity does not provide a mere defense to

---

[1] The Mailly Affidavit is attached to this Motion as Exhibit 1, the Williams Affidavit is attached as Exhibit 2, and the King Affidavit is attached as Exhibit 3, as set forth in the attached Exhibit Index.

3

liability, but rather a complete immunity from suit." *Shepherd v. Davis*, 300 Fed. Appx. 832, 837 (11th Cir. 2008). To demonstrate entitlement to qualified immunity, a defendant "'must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal citations omitted). If the official establishes this, the burden shifts to the plaintiff to demonstrate qualified immunity is inappropriate. *Jacoby v. Baldwin County*, 835 F.3d 1338, 1344 (11th Cir. 2016). To meet this burden, "the plaintiff must then prove: (1) that the officer violated a constitutional rights and (2) that the right was clearly established "in light of the specific context of the case, not as a broad general proposition." *Hazelton*, 2011 WL 1315527 at 4 (quoting *Case v. Eslinger*, 555 F. 3f 1317, 1325 (11th Cir. 2009).

Furthermore, where law enforcement officers claim qualified immunity for a warrantless arrest, "whether exigent circumstances and probable cause existed to justify the arrest is not the relevant inquiry. Rather, the court must determine whether the officers reasonably but mistakenly believed probable cause and exigent circumstances justified the warrantless arrest." *Napier v. Fowler*, 09-60684-CIV, 2009 WL 10699620, at *9 (S.D. Fla. Dec. 1, 2009); *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)("We have recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable. ...The same is true of their conclusions regarding exigent circumstances.").

1.  **Performing a Discretionary Function**

The proper inquiry to determine if an official was acting in the scope of his discretionary authority is "whether the act complained of, if done for a proper purpose, would be within, or

4

reasonably related to, the outer perimeter of an official's discretionary duties. The scope of immunity should be determined by the relation of the [injury]…to the duties entrusted to the officer." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998).

It is beyond dispute that the Defendant Officers were on duty at the time of the incident in question, and that their duties as law enforcement officers include responding to reports of crimes, investigating whether crimes occurred, and taking suspects into custody. There is no serious contention that the Officers were not acting within the scope of their discretionary authority at the time of the incident that formed the basis for Plaintiff's claims. In fact, Plaintiff attached to his Second Amended Complaint police reports that set forth that these officers were acting on a report of battery by Mr. David Rogers. (Doc. 17-1 at 4-5, 7-10). Defendants Williams and King[2] set forth that they were acting in their capacity as law enforcement officers for the City of Lakeland, were wearing their department-issued uniforms, and were on duty for the Lakeland Police Department at the time of the incident in question. (Statement of Material Facts ¶¶8-9, 15; Williams Aff. ¶¶3, 6; King Aff. ¶3). Plaintiff's own allegations also set forth that Defendants were likewise acting in their capacity as law enforcement officers for the City of Lakeland (Doc. 17 § 4). As such, this element is not in dispute.

    2.    **No Violation of a Constitutional Right or Clearly Established Law**

When a government actor establishes he was acting within the scope of his discretionary authority, the burden then shifts to the plaintiff to prove qualified immunity does not apply. *Stephens v. DeGiovanni*, 852 F.3d 1298, 1314 (11th Cir. 2017). To determine if a plaintiff has met this burden, courts employ a two-prong analysis: First, do the facts, construed in the light

---

[2] Defendant Mailly asserts that he was not present at the incident. However, he was acting as a law enforcement officer for the City of Lakeland at the time that he processed Mr. Rogers's report that Plaintiff battered him. (Mailly Aff. ¶10; Williams Aff. ¶15; King Aff. ¶14).

most favorable to the plaintiff, show the violation of a constitutional right? Second, is the right at issue "clearly established"? *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232-33 (2009)).

### a. No Violation of a Constitutional Right

Plaintiff's Second Amended Complaint alleges that Defendants violated Plaintiff's Fourth Amendment and Fourteenth Amendment[3] rights by arresting Plaintiff in his home without a warrant on April 19, 2016, and subjecting him to excessive force. (Doc. 17 § 4). Defendants (collectively) dispute that any of them violated Plaintiff's Fourth Amendment Rights, and assert that based on the totality of the circumstances leading to his arrest, exigent circumstances existed that permitted Officer Williams to enter Plaintiff's house without a warrant to arrest him.

"The Fourth Amendment establishes '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Shepard v. Davis*, 300 Fed. Appx. 832, 838 (11th Cir. 2008). "Although the Fourth Amendment shields one's home from unwanted and warrantless intrusions by law enforcement officer, 'the ultimate touchstone of the Fourth Amendment is 'reasonableness.' [and thus,] the warrant requirement is subject to certain exceptions." *Id.* One such exception is exigent circumstances. "A warrantless arrest in the home without consent is prohibited by the Fourth Amendment absent probable cause and exigent circumstances." *Washington v. Tobeck*, 432 Fed. Appx. 900, 901 (11th Cir. 2011). The Eleventh Circuit has provided that "danger to the arresting officers" constitutes exigent circumstances to make a warrantless in home arrest. *Moore v. Gwinnet County*, 805 Fed. Appx. 802, 807-08 (11th Cir. 2020); *U.S. v. Edmondson*, 791 F. 2d 1512, 1515 (11th Cir. 1986).

---

[3] Plaintiff's Fourteenth Amendment claim is basically duplicative of his Fourth Amendment claim. The Court ruled that Plaintiff's Fourteenth Amendment claim as pled by Plaintiff in his Second Amended Complaint is not a discrete claim. [Doc. 36]. As such, Defendants arguments addressing Plaintiff's Fourth Amendment claim also address Plaintiff's Fourteenth Amendment claim.

6

On April 19, 2016, Officer Mailly made contact with David Rogers in the Lakeland Police Department Station. (Statement of Material Facts ¶¶1-5; Mailly Aff. ¶¶3-6). Mr. Rogers reported to Officer Mailly that he had been battered by Plaintiff at Plaintiff's home on April 18, 2016. (Statement of Material Facts ¶¶1-5; Mailly Aff. ¶¶3-6). Officer Mailly observed bruising to Mr. Rogers' face, which corroborated his allegations of battery. (Statement of Material Facts ¶¶1-5; Mailly Aff. ¶¶3-6). Officer Mailly contacted Officer King, who was on duty, and informed Officer King that he was conducting a battery investigation and requested that Officer King go to the scene of the incident to make contact with Plaintiff. (Statement of Material Facts ¶10; King Aff. ¶3).

Officer Williams was also on duty on April 19, 2016 working with his K-9 partner. (Statement of Material Facts ¶8; Williams Aff. ¶3). Officer Williams reported to the scene of the incident to assist Officer King in locating Plaintiff given Plaintiff's prior history of charges for violent crimes, including armed robbery, battery on a law enforcement officer, aggravated battery with a deadly weapon, aggravated assault with a deadly weapon, and domestic battery, as well as Plaintiff's propensity to flee the scene. (Statement of Material Facts ¶¶10, 12-14; Williams Aff. ¶¶ 3-6). Officer Williams was familiar with Plaintiff from a prior arrest for sexual battery, including his criminal history and that he had previously fled on foot. (Statement of Material Facts ¶14; Williams Aff. ¶¶ 3-5).

Officer Williams's search of NCIC/FCIC (National Crime Information Center/Florida Crime Information Center) also identified Plaintiff as a violent offender and "possibly armed and dangerous." (Statement of Material Facts ¶12; Williams Aff. ¶3). Plaintiff was also on home confinement for pre-trial release at the time, although Officer Williams was not aware of this fact at the time of the arrest. (Order Granting Pretrial Release in Case No. 53-2016CF-009544,

attached to Defendants' Motion and Request to Take Judicial Notice). At the time, Officer Williams was of the understanding that the battery that was being investigated would be charged as a felony due to Plaintiff's prior convictions for battery charges. (Statement of Material Facts ¶13; Williams Aff. ¶4).

As Officer Williams and Officer King approached the scene, there were numerous dog kennels outside and the dogs were barking. (Statement of Material Facts ¶16; Williams Aff. ¶6). Plaintiff came outside to look at the dog kennels and from only approximately 20 feet away, Officer Williams identified himself as police and yelled for Plaintiff to stop. (Statement of Material Facts ¶¶17, 19; Williams Aff. ¶6; King Aff. ¶6). Officer Williams and Officer King were both in their police uniforms at the time. (Statement of Material Facts ¶15; Williams Aff. ¶6). Upon Officer Williams identifying himself as a police officer and yelling at Plaintiff to stop, Plaintiff stopped and looked at the officers and then ran back into his home. (Statement of Material Facts ¶¶20-22; Williams Aff. ¶¶6-7; King Aff. ¶6).

After Plaintiff looked at the officers and ran back into his house, Officer Williams and Officer King did not know what Plaintiff's next move was going to be. (Statement of Material Facts ¶¶22, 25-28; Williams Aff. ¶¶8-11; King Aff. ¶6). But from their perspective, regardless of whether Plaintiff actually heard them identify themselves as police officers or whether he could see that they were wearing police uniforms, the Officers saw him look at them and then turn and run, after they identified themselves, into an unsearched and unsecured home.[4]

---

[4] Plaintiff admitted during his interview, post-Miranda, that he was aware police officers were approaching him and he fled into his house. (Statement of Material Facts ¶¶34-37; King Aff. ¶11). Defendants' point this out to the extent Plaintiff argues he was unaware that Officer Williams and Officer King were police officers. However, Defendants' maintain that what is relevant for purposes of establishing exigency is what the officers reasonably believed based on the totality of the circumstances, and the Officers were of the understanding Plaintiff knew they were police officers and ran back into his unsecured house.

8

The Officers did not know if Plaintiff were going to flee the scene or if he were going into the house to access weapons. (Statement of Material Facts ¶¶22, 26-27; Williams Aff. ¶¶6-10; King Aff. ¶6). Officer King ran towards what he described as the rear of the residence to make sure Plaintiff did not flee from the back of the house. (Statement of Material Facts ¶22; King Aff. ¶ 6).

Based on Plaintiff's prior history of violence, Officer Williams's belief that Plaintiff would be charged with felony battery, and Officer Williams's concern that Plaintiff may be retreating to the house to access weapons, Officer Williams pursued Plaintiff into his house. (Statement of Material Facts ¶¶23-28; Williams Aff. ¶¶7-11). As Plaintiff was not adhering to Officer Williams's commands to stay where he could see him, Officer Williams unleashed K-9 Officer Hyde to take Plaintiff into custody. (Statement of Material Facts ¶¶25-28; Williams Aff. ¶¶7-13). Once K-9 Officer Hyde bit and secured Plaintiff to allow Officer Williams to take Plaintiff into custody, Officer Williams placed Plaintiff in handcuffs. (Statement of Material Facts ¶¶30-32; Williams Aff. ¶¶6-13). Officer Williams did not use any physical force on Plaintiff not necessary to place him into handcuffs. (Statement of Material Facts ¶¶30-32; Williams Aff. ¶¶10-13). Once additional officers arrived at the scene, Officer King went back around the front of the house where he saw Plaintiff being secured. (Statement of Material Facts ¶31; King Aff. ¶7-9). Officer King assisted in transporting Plaintiff to his patrol vehicle, which was on site. (Statement of Material Facts ¶33; King Aff. ¶9).

These circumstances, when viewed in their totality, were sufficient for Officer Williams to have entered Plaintiff's home without a warrant to apprehend him. First, Officer Williams and Officer King had probable cause to arrest Plaintiff based on the information Mr. Rogers relayed to Officer Mailly at the Lakeland Police Station, and which was corroborated by the visible

bruising and swelling on Mr. Rogers's face. While the alleged battery had occurred the previous day, the information was relayed to Officer Mailly on April 19th, and upon receiving the information he contacted Officer King to investigate further by way of making contact with the suspect.

While Officers Williams and King did not have an arrest warrant at the time they were heading to Plaintiff's home to make contact with him, the Fourth Amendment does not require that officers have a warrant to make initial contact with a suspect at his home to investigate a crime. *See, e.g., Hearn v. Sec'y, Dept. of Corr.*, 3:07-CV-320-J-33MCR, 2010 WL 1462365, at *6 (M.D. Fla. Apr. 13, 2010), *aff'd sub nom. Hearn v. Florida*, 410 Fed. Appx. 268 (11th Cir. 2011)(observing that where officers were told one suspect was often at another suspect's home and traced phone call to the other suspect's home, "the officers did not need a warrant to visit Hearn's house to determine whether Wade, the third co-defendant, was at Hearn's house.").

The officers were acting within the law when they approached Plaintiff's home. Upon seeing the Plaintiff outside of his home, Officer Williams identified himself as a police officer from only approximately 20 feet away. Plaintiff then looked at Officer Williams and ran back into his home. Officer Williams reasonably believed Plaintiff recognized them as police officers and fled, and considering Plaintiff's prior history of violent crimes, Officer Williams had exigent circumstances to enter Plaintiff's home to take him into custody as the home had not been searched or secured and Officer Williams considered that Plaintiff might have access to weapons in the home. *Moore v. Gwinnet County*, 805 Fed. Appx. 802, 807-08 (11th Cir. 2020).

As set forth in *Moore*, exigent circumstances includes "danger to arresting officers." *Id.* at 807 (quoting *U.S. v. Edmondson*, 791 F. 2d 1512, 1515 (11th Cir. 1986). In *Moore*, the Eleventh Circuit agreed with the District Court when it "found that the warrantless arrest was

10

justified by exigent circumstances because it was reasonable for the officers to conclude they faced imminent risk of serious injury when Moore turned away from them towards her home's dark foyer after being told she was under arrest." *Id.* at 808. As in *Moore*, Officer Williams was justified by exigent circumstances to enter Plaintiff's home to take him into custody.

Officer Williams was investigating a violent crime, and Officer Williams was of the understanding that Plaintiff would be charged with felony battery based on his prior criminal history. Officer Williams also knew Plaintiff had a violent criminal history, including armed robbery, battery on a law enforcement officer, aggravated battery with a deadly weapon, aggravated assault with a deadly weapon, and domestic battery. Further, Plaintiff was identified in the NCIS/FCIS system as potentially being armed and dangerous. Under these circumstances, where probable cause existed to believe Plaintiff had committed a battery that would be charged as a felony, and where Plaintiff had a history of prior violent crime, including crimes involving firearms and battery on a law enforcement officer, Officer Williams had reason to believe that exigent circumstances existed to enter the home and arrest Plaintiff. *See, e.g., Hill v. Orange County Sheriff,* 6:14CV1045ORL22GJK, 2016 WL 8938379, at *5 (M.D. Fla. Mar. 10, 2016), aff'd, 666 Fed. Appx. 836 (11th Cir. 2016) (finding it was "reasonable for Corporal Covelli to believe that an exigency existed" where the suspect "had committed serious, violent felonies with a firearm and had been eluding the police," was likely to be armed and dangerous, probable cause existed that the suspect had committed the offenses, and "perhaps most importantly, Corporal Covelli reasonably believed that the Suspect would escape if he did not take immediate action, and that the Suspect, potentially armed and dangerous, posed a threat to the officers and the public," and concluding officer was entitled to qualified immunity).

Officer Williams identified himself to Plaintiff while Plaintiff was standing outside of his house. After Officer Williams identified himself, he observed that Plaintiff looked at him and the other officers and then saw Plaintiff immediately run into his house. When Plaintiff ran back into his home and did not obey Officer Williams's commands, it was reasonable for Officer Williams to be concerned that Plaintiff could have a weapon in the house which could put his or the other officer's safety at risk. *Moore*, 805 Fed. Appx. at 807-08 (11th Cir. 2020).

Here, the Officers had probable cause to arrest Plaintiff for battery based on Mr. Rogers's criminal complaint, including the photographs of Mr. Rogers's injuries; it was reasonable for Officer Williams to believe Plaintiff would be charged with felony battery based on Plaintiff's prior battery convictions; and it was reasonable for Officer Williams to believe that there were exigent circumstances justifying entry into Plaintiff's home after he fled into an unsearched and unsecured home, especially considering Plaintiff's violent criminal history and his classification as potentially armed and dangerous. It was therefore reasonable for Officer Williams to effectuate a warrantless arrest. *Moore*, 805 Fed. Appx. at 807-08 (11th Cir. 2020).

  b. **No Violation of Clearly Established Law**

Even if Plaintiff can establish a violation of his constitutional rights, which Defendants deny, Plaintiff cannot establish a violation of clearly established law. "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand what he is doing violates that right." *Walters v. Freeman*, Case No.: 8:11-cv-2120-T35-TGW, 2013 WL 12097938 * 7 (M.D. Fla. 2013*) (citing Fils v. City of Aventura*, 647 F. 3d 1272, 1291 (11th Cir. 2011)); *Shepard v. Davis*, 300 Fed. Appx. 832, 839 (11th Cir. 2008)(quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). To satisfy his burden of showing the law is clearly established, a plaintiff "cannot rely on 'general, conclusory

allegations' or 'broad legal truisms.'" <u>Post v. City of Fort Lauderdale</u>, 7 F.3d 1552, 1557 (11th Cir. 1993)(internal citations omitted).

In this case, Plaintiff cannot establish a violation of clearly established law. It is undisputed that Officer Williams entered Plaintiff's home after Plaintiff ran inside. However, the Eleventh Circuit has previously stated that "danger to arresting officers" constitutes exigent circumstances that can justify a warrantless arrest in a person's home. *U.S. v. Edmondson*, 791 F.2d at 1515. Because the Eleventh Circuit previously determined that "danger to arresting officers" is an exigent circumstance justifying a warrantless arrest in the home, for an officer's conduct to constitute a "clear violation of the law" any decision providing otherwise would have to have been stated with "a very high degree of prior factual particularity" or Officer Williams's conduct would have to have been "so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the officer, notwithstanding the lack of fact-specific case law." *Walters v. Freeman*, Case No.: 8:11-cv-2120-T35-TGW, 2013 WL 12097938 * 7-8 (M.D. Fla. 2013*)*. Neither of those situations are present here.

Defendants are aware of no case prior to April 19, 2016 with a very high degree of prior factual particularity to have put Officer Williams on notice that his conduct was a violation of clearly established law. Such a case would need to involve an officer having probable cause to arrest a suspect for a violent felony, a suspect who has a violent criminal history and is listed in the NCIS/FCIS as potentially "armed and dangerous," and who flees into an unsearched and unsecured building where weapons may be located. Such a case would also need to involve a situation in which the officer approaches the suspect's home and identifies himself to the suspect, who is outside, and the suspect, after looking at the officer, runs inside the home, which

13

has not been searched, leaving the officer to wonder if the suspect is going to access a weapon. Defendants have searched but have not located any such case.

To the contrary, there is case law with similar facts (or even less exigent facts) that supports that Officer Williams' conduct was not a clear violation of established law. While the Eleventh Circuit's decision in *Moore* was issued in 2020 (after 2016), its existence supports that Officer Williams' conduct was not a violation of clearly established law. In *Moore*, the Eleventh Circuit found that an officer's warrantless in home arrest was justified because a suspect entered her home against an officer's orders and the officer believed his safety to be in danger. The facts in the present case are comparable to that in *Moore*. The existence of a recent case this year in the Eleventh Circuit upholding similar conduct to that of Officer Williams' conduct on April 19, 2016 evidences that Officer Williams' (and Officer King's) conduct on April 19, 2016 was not a violation of a clearly established law.[5] Additionally, under the circumstances set forth above, even if the officers were mistaken in their belief that probable cause and exigent circumstances existed, it was nevertheless reasonable for them to conclude that probable cause and exigent circumstances were present. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)

### c. No Excessive Force

"Like other Fourth Amendment inquiries, judicial scrutiny of an officer's use of force requires balancing of the individual's Fourth Amendment interests against the relevant

---

[5] Defendants assert that the discussion in the Court's Order denying Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint is inapposite for purposes of this Motion. (Doc. 36, Section 3, P. 13-21). In that Order the Court addressed the potential exigent circumstance of "hot pursuit" based on the Second Amended Complaint and the incomplete police reports attached thereto, and addressed how, for purposes of Defendants' Motion to Dismiss, the case of *United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976), and its progeny did not support that alleged facts in Plaintiff's Second Amended Complaint supported a finding of exigent circumstances based on "hot pursuit." (Doc. 36, Section 3, P. 13-21). However, the Court's Order did not address the exigent circumstance of "danger to arresting officers." The arguments pertaining to exigent circumstances in this Motion are focused on the exigent circumstance of "danger to arresting officers" which has been recognized by Eleventh Circuit case law both before and after the arrest at issue in this case. *Moore*, 805 Fed. Appx. at 807-08; *Edmondson*, 791 F. 2d at 1515.

government interests." *Moore v. Gwinnet County*, 805 Fed. Appx. at 808) (internal quotations and citations omitted). "The operative question in excessive force cases is whether the totality of the circumstances justifie[s] a particular sort of search or seizure." *Id.*

Courts "assess the reasonableness of the force used under an objective rubric that must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. [Courts] conduct a three-part inquiry to facilitate [their] constitutional evaluation of an officer's use of force by considering: (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted." *Id.; see also Crosby v. Monroe County*, 394 F. 3d 1328, 1333 (11th Cir. 2004)(noting that the "reasonableness" determination in an excessive force claim "is an objective one: the question is whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation."); *Graham v. Connor*, 490 U.S. 386, 397 (1989)(explaining "reasonableness" must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight); *Robinson v. Arrugueta*, 415 F. 3d 1252, 1256 (11th Cir. 2005)("[e]ven if in hindsight the facts show that [the officer] perhaps would have escaped unharmed," the court must analyze the officer's actions from the perspective of a reasonable officer on the scene at the time of the incident giving rise to the plaintiff's claim).

Officer Williams was justified in his use of force. For the same reasons that he reasonably believed he had exigent circumstances to enter the home to arrest Plaintiff, Officer Williams had a reasonable concern regarding his safety and the other officers on the scene. *Moore.* 805 Fed. Appx. at 808. Plaintiff failed to adhere to numerous commands of Officer Williams. Plaintiff continued moving deeper into the house and Officer Williams felt it was

necessary to apprehend Plaintiff before he entered another part of the house where weapons could be present. Officer Williams released K-9 officer Hyde to apprehend Plaintiff. Once K-9 Officer Hyde apprehended Plaintiff, Plaintiff continued to fight, so Officer Williams moved in to place Plaintiff on his stomach and handcuff Plaintiff's hands behind his back. Plaintiff's Second Amended Complaint does not allege that he complied with the officer's requests nor does it allege that he was kicked or beaten after he was apprehended and handcuffed. (Doc. 17, §4). This use of force was necessary to apprehend Plaintiff since he continued to move towards unsecured parts of the house where weapons could be present. *Moore.* 805 Fed. Appx. at 808.

Further, the relationship between the need and amount of force used was appropriate to subdue Plaintiff. *Moore.* 805 Fed. Appx. at 808. The Eleventh Circuit has held that "'noncompliance or continued physical resistance to arrest justifies the use of force by a law enforcement officer.'" *Moore.* 805 Fed. Appx. at 808 (quoting *Wate v. Kubler*, 839 F. 3d 1012, 1021 (11th Cir. 2016)). In *Moore*, the Eleventh Circuit upheld the use of taser to subdue a person in the persons home without a warrant where the person was continuously non-compliant. *Moore.* 805 Fed. Appx. at 808. In *Moore*, the Eleventh Circuit reasoned:

> [H]ere the officers struggled with Moore in a setting unfamiliar to them but intimately familiar to her. This disparity of familiarity is significant because the officers did not know whether Moore had a gun in the nightstand because the officers did not know whether Moore had a gun in the nightstand by the door. Accordingly, based on the uncontroverted facts alone, the officers reasonably believed they need to use a taser to subdue Moore.

The facts in *Moore* are analogous with the facts in this case, in that Officer Williams was in Plaintiff's home, a setting unfamiliar to him with which Plaintiff was intimately familiar. *Moore.* 805 Fed. Appx. at 808. Officer Williams did not know if Plaintiff had a weapon in another portion of the house and he was heading deeper and deeper into the house. *Moore.* 805 Fed. Appx. at 808. Similar to how the officers in Moore were justified in using their taser, Officer

16

Williams was justified in unleashing K-9 Officer Hyde to apprehend Plaintiff. *Moore*. 805 Fed. Appx. at 808.

Further, the use of K-9 Officer Hyde to apprehend Plaintiff was not disproportionate to the need for force. *Moore*. 805 Fed. Appx. at 808. This situation is distinct from other cases in which the K-9 bit the suspect multiple times or where a K-9 was used on a compliant suspect who immediately submitted to the police officers. *Cf. Crenshaw v. Lister*, 556 F.3d 1283, 1293 (11th Cir. 2009)(finding use of canine to apprehend armed robbery suspect was objectively reasonable and did not violate his constitutional right to be free from excessive force even though suspect suffered 31 bite wounds, where suspect fled police and police reasonably believed him to be armed and dangerous); *Priester v. City of Riviera Beach*, 208 F.3d 919, 927 (11th Cir. 2000)(finding officer's actions were not objectively reasonable where he allowed K-9 to bite the plaintiff for two minutes even though the plaintiff was suspected of stealing $20 in snacks, did not attempt to flee or resist, but submitted immediately to the police, and immediately complied with the officer's command to get on the ground).

Rather, the facts of this case are more in line with those of *Jay v. Hendershott*, 579 Fed. Appx. 948, 953 (11th Cir. 2014). In that case, the Eleventh Circuit reversed an order denying qualified immunity involving the apprehension of a suspect with a K-9. In considering the *Graham* factors, the Court concluded the use of the canine to subdue the plaintiff did "not so plainly traverse the 'hazy border' between unconstitutional and permissible force as to rise to the level of obvious clarity." *Id.* The officers' initial pursuit of the plaintiff was not precipitated by his commission of a serious offense, but the facts alleged in the complaint indicated the plaintiff "was altogether uncooperative, and officers reasonably could have believed that [he] posed a significant threat to officer safety and to the safety of others." *Id.* The plaintiff had led the

17

officers on a lengthy pursuit, refused to pull over, ignored officers' orders to stop, and "attempted to enter an open garage that could have contained weapons and a residence that could have held potential hostages." *Id.* The court concluded that "when viewed against the background of Monell's extended unresponsive and unusual conduct, we cannot say that it should have been obvious to every reasonable officer that Monell's conduct and the potential danger of the situation did not call for the force used." *Id.* As such, the court did not find the use of the K-9 so "'wholly unnecessary' or 'grossly disproportionate' as to blatantly cross the line of constitutionality in the absence of any case law on point." *Id.*

Here, Officer Williams used Hyde to apprehend Plaintiff after he had failed to obey commands, fled into a house that had not been secured, and with the knowledge that Plaintiff had a history of violent offenses and was labeled as potentially armed and dangerous. Furthermore, once Officer Williams was able to move Plaintiff in a position where he could handcuff him, he had the K-9 release Plaintiff. Under these circumstances, the use of the canine was objectively reasonable.

As to Officer King, there is no evidence he had any involvement in the arrest other than taking Plaintiff to his patrol car and transporting Plaintiff after he was handcuffed. (Statement of Material Facts ¶¶22, 31, 33-38; King Aff. ¶¶6-9, 12). Such conduct on the part of Officer King is not excessive force.

Further, Officer Mailly was not at the scene of the arrest and cannot be found to have used any force (let alone excessive force). (Statement of Material Facts ¶7; King Aff. ¶14; Williams Aff. ¶15; Mailly Aff. ¶10).

Lastly, there is no evidence that Plaintiff sustained any serious or lasting injury after the arrest. Plaintiff's Answers to Defendant's Interrogatories indicate that the only injuries Plaintiff

18

alleges he sustained were "dog bites on both legs and other parts of body." (Plaintiff's Answers to Interrogatories are attached as Exhibit 4 (Answer to Interrogatory Nos. 5-6)). Plaintiff was transported from the scene to Lakeland Regional Medical Center (LRMC), and upon being medically cleared was transported to the Polk County Jail. Plaintiff did not need sutures to treat any wounds from K-9 Hyde. (Redacted Medical Records from LRMC attached as Exhibit 5).

Plaintiff's medical records corroborate that Plaintiff did not sustain any serious or lasting injury, that he did not receive sutures, and that he was medically cleared within a span of an hour. (Redacted Medical Records from LRMC attached as Exhibit 5). Plaintiff's medical records from LRMC indicate that Plaintiff had abrasions and puncture wounds to his legs that <u>did not</u> require sutures and an injury to his left index finger. *Id.* Plaintiff did not complain of any other injuries, which would support that he was not punched and kicked by any officers and did not sustain a bruised rib as alleged in his Second Amended Complaint. *Id.* Further, Plaintiff is not alleging he sustained any injuries for allegedly being punched and kicked. (Exhibit 4, Answer to Interrogatory Nos. 5-6).

Plaintiff has not provided any record to indicate he sustained any serious or lasting injury or was treated after he was discharged by LRMC within an hour of being admitted, and has failed to respond to Defendants' discovery requests.[6] For these reasons, Officer Williams's use of force to apprehend Plaintiff was justified and was not excessive.

### III. Conclusion

Defendants are entitled to Qualified Immunity as to Plaintiff's claims. Plaintiff cannot meet his high burden to establish that any of the Defendants: (1) violated his constitutional rights and (2) violated a clearly established law. Further, Officer Mailly was not at the scene of the

---

[6] Defendants have moved for sanctions to prohibit Plaintiff from using any document responsive to their requests for production not produced (Doc. 61).

19

arrest and there is no evidence that Officer King entered Plaintiff's home to apprehend Plaintiff or had any involvement other than transporting Plaintiff. Defendants respectfully request this Court to enter summary final judgment in favor of each Defendant on all claims, and directing the Clerk to enter judgment in Defendants' favor against Plaintiff, Rodrecius Antonio Hamilton.

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was served by U.S. Mail to Plaintiff, Rodrecius Antonio Hamilton, ID Number 365067, Hamilton Correctional Institution-Annex, 11419 S.W. County Road, #249, Jasper, Florida 32052-1360 on this 22nd day of June, 2020.

/s/ *Kristie Hatcher-Bolin*
**MARK N. MILLER, ESQUIRE**
Florida Bar No. 239216
mark.miller@gray-robinson.com
karen.pollard@gray-robinson.com
**KRISTIE HATCHER-BOLIN, ESQUIRE**
Florida Bar No. 521388
kristie.hatcher-bolin@gray-robinson.com
linda.august@gray-robinson.com
Post Office Box 3
Lakeland, Florida 33802-0003
Telephone: (863) 284-2251
Facsimile: (863) 683-7462
- and -
**CRAIG F. NOVICK, ESQUIRE**
Florida Bar No.: 0026656
Suite 1400, 301 East Pine Street
Post Office Box 3068
Orlando, Florida 32802-3068
Telephone: 407-843-8880
Facsimile: 407-244-5690
Craig.Novick@gray-robinson.com
Chantal.Mccoy@gray-robinson.com
Attorneys for Defendants

/4120287/119#41322015 v3