UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RODRECIUS ANTONIO HAMILTON,

        Plaintiff,                              CASE NO.: 8:18-cv-885-T-02TGW

v.

OFFICER JEREMY WILLIAMS, OFFICER JUSTIN KING, AND OFFICER JOEL MAILLY.

        Defendants.
_____/

## NOTICE OF FILING STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS' RESPONSE TO PLAINTIFF'S FIRST MOTION FOR SUMMARY JUDGMENT

Defendants, by and through their undersigned counsel hereby give notice of filing the Statement of Undisputed Material Facts in Support of Defendants' Motion For Summary Judgment and Defendants' Response to Plaintiff's First Motion for Summary Judgment in the above referenced action.

Defendants' Statement of Undisputed Material Facts was mailed to Plaintiff on May 21, 2020 as shown in the letter attached hereto as Exhibit A. The Statement of Undisputed Material Facts did not contain the references to the affidavits because at that time Defendants' counsel was not in possession of all signed affidavits, but the substance of the Statement has not changed. To date, however, Plaintiff has not responded in any manner to Defendants' counsel's letter regarding the Statement of Undisputed Material Facts or the Statement of Undisputed Material Facts itself. Plaintiff did not submit a Statement of Undisputed Material Facts with his First

1

Motion for Summary Judgment. Defendants therefore rely upon their Statement of Undisputed Material Facts both in support of their Motion for Summary Judgment and in response to Plaintiff's First Motion for Summary Judgment.

### CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was served by U.S. Mail to Plaintiff, Rodrecius Antonio Hamilton, ID Number 365067, Hamilton Correctional Institution-Annex, 11419 S.W. County Road, #249, Jasper, Florida 32052-1360 on this 22nd day of June, 2020.

/s/ *Kristie Hatcher-Bolin*
**MARK N. MILLER, ESQUIRE**
Florida Bar No. 239216
mark.miller@gray-robinson.com
karen.pollard@gray-robinson.com
**KRISTIE HATCHER-BOLIN, ESQUIRE**
Florida Bar No. 521388
kristie.hatcher-bolin@gray-robinson.com
linda.august@gray-robinson.com
Post Office Box 3
Lakeland, Florida 33802-0003
Telephone: (863) 284-2251
Facsimile: (863) 683-7462
- and -
**CRAIG F. NOVICK, ESQUIRE**
Florida Bar No.: 0026656
Suite 1400, 301 East Pine Street
Post Office Box 3068
Orlando, Florida 32802-3068
Telephone: 407-843-8880
Facsimile: 407-244-5690
Craig.Novick@gray-robinson.com
Chantal.Mccoy@gray-robinson.com
Attorneys for Defendants

/4120287/119#41393069 v1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RODRECIUS ANTONIO HAMILTON,

        Plaintiff,　　　　　　　　　　CASE NO.: 8:18-cv-885-T-02TGW

v.

OFFICER JEREMY WILLIAMS, OFFICER JUSTIN KING, AND OFFICER JOEL MAILLY.

        Defendants.
_____/

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS' RESPONSE TO PLAINTIFF'S FIRST MOTION FOR SUMMARY JUDGMENT**

Defendants Jeremy Williams, Justin King, and Joel Mailly, by and through their undersigned attorneys, submit the following Statement of Undisputed Material Facts in Support of their Motion for Summary Judgment and in support of their Response to Plaintiff's First Motion for Summary Judgment:

1. On April 19, 2016, Officer Joel Mailly was working as a station duty officer for the City of Lakeland and was working at the Lakeland Police Department. On that day, Officer Mailly made contact with David Rogers, who reported a battery that occurred on the prior day, April 18, 2016. (Mailly Aff. ¶3).

2. Mr. Rogers reported to Officer Mailly that on April 18, 2016, he accompanied a friend to 3104 Florida Avenue North, Lakeland, Florida 33805, where Rodrecius Hamilton was living at the time. (Mailly Aff. ¶4).

3. Mr. Rogers reported to Officer Mailly that while he was at the residence at 3104

1

Florida Avenue North, he had an argument with Mr. Hamilton, that Mr. Hamilton placed him in a headlock, and that Mr. Hamilton repeatedly struck him in the face with a closed fist. (Mailly Aff. ¶5).

4. During Mr. Rogers's visit to the Lakeland Police Department on April 19, 2016, Officer Mailly observed swelling and redness around Mr. Roger's right eye, which was almost swollen shut, and that both of Mr. Rogers's eyes were bloodshot. (Mailly Aff. ¶6).

5. Mr. Rogers completed a sworn written statement in reference to the incident. (Mailly Aff. ¶7).

6. Officer Harvey arrived at the Lakeland Police Department and took photographs of Mr. Rogers' face and Officer Mailly placed the photos into evidence. (Mailly Aff. ¶8).

7. Officer Mailly was not present when Mr. Hamilton was apprehended by Lakeland Police Officers Jeremy Williams and Justin King on April 19, 2016. (Mailly Aff. ¶10; Williams Aff. ¶15; King ¶14).

8. On April 19, 2016, Officer Jeremy Williams was working as a police officer for the City of Lakeland with his K-9 partner, Hyde. (Williams Aff. ¶3).

9. On April 19, 2016, Officer Justin King was also working as a police officer for the City of Lakeland. (King Aff. ¶3).

10. Officer Williams and Officer King were asked to respond to 3104 Florida Avenue North, Lakeland, Florida 33805 to assist in locating Rodrecius A. Hamilton, the suspect in the battery reported by David Rogers. (Williams Aff. ¶3; King Aff. ¶3).

11. Prior to approaching the residence at 3104 Florida Avenue North, Lakeland, Florida 33805, Officer King conducted a search of Mr. Hamilton in DAVID to familiarize himself with Mr. Hamilton's appearance. (King Aff. ¶4).

12. Before Officer Williams responded to the incident scene, he reviewed Mr. Hamilton's criminal history and from that review understood that Mr. Hamilton had prior convictions for battery and other charges involving violence. He also searched the NCIC/FCIC (National Crime Information Center/Florida Crime Information Center) databases, which identified Mr. Hamilton as a violent offender and "possibly armed and dangerous." (Williams Aff. ¶3).

13. Based on Mr. Hamilton's prior criminal history, including prior convictions on battery charges, it was Officer Williams's understanding that the battery being investigated would be charged as a third degree felony battery based on Mr. Hamilton's prior battery convictions. (Williams Aff. ¶4).

14. Officer Williams was also involved with Officer Joel Mailly and the Winter Haven Police Department previously in arresting Mr. Hamilton for sexual battery charges. During that prior arrest for sexual battery, he was made aware of Mr. Hamilton's criminal history. (Williams Aff. ¶5).

15. When the officers approached the residence, they were wearing their department-issued police uniforms. (Williams Aff. ¶6).

16. When Officer Williams approached the residence, he noticed several dog kennels and barking dogs at the rear of the residence. (Williams Aff. ¶6).

17. As he approached the residence, Officer Williams also saw the suspect, Rodrecius A. Hamilton, open the door, walk outside, and look toward the dog kennels. (Williams Aff. ¶6).

18. Officer King also observed a man matching Mr. Hamilton's description exit what Officer King believed to be the front door of the residence. (King Aff. ¶5).

19. Officer Williams yelled at Mr. Hamilton to stop and to come towards him. At

3

that time, Officer Williams estimated Mr. Hamilton was approximately 20 feet away from him. (Williams Aff. ¶6).

20. Officer Williams observed Mr. Hamilton stop and look towards him and the other two officers with him. (Williams Aff. ¶6).

21. After Officer Williams announced himself as a police officer, he saw Mr. Hamilton turn and run back inside the residence. (Williams Aff. ¶7).

22. Officer King also observed Mr. Hamilton make eye contact with the officers present and then flee into the residence. Officer King then ran to what he believed to be the rear of the residence to ensure Mr. Hamilton did not attempt to flee through a back door. (King Aff. ¶6).

23. Officer Williams ran after Mr. Hamilton. (Williams Aff. ¶7).

24. As Officer Williams reached the door and proceeded after Mr. Hamilton, the door was pushed back on Officer Williams so Officer Williams kicked the door and it came open. (Williams Aff. ¶7).

25. Officer Williams saw Mr. Hamilton inside and told him to stop and come to the officer. Officer Williams warned that he would release the dog if Mr. Hamilton did not stop and come to him, but Officer Williams observed Mr. Hamilton move back towards a hallway. Officer Williams did not observe any indication that Mr. Hamilton was surrendering. (Williams Aff. ¶8).

26. Officer Williams observed Mr. Hamilton continue down the hallway, and Officer Williams believed Mr. Hamilton was stalling for time so he could determine how to escape. (Williams Aff. ¶9).

27. Officer Williams had not searched or secured Mr. Hamilton, and Officer Williams

4

had not searched the house, so he did not know if there were weapons Mr. Hamilton could access. (Williams Aff. ¶10).

28. Officer Williams also considered Mr. Hamilton's criminal history, including convictions for crimes involving violence, and Officer Williams felt it was imperative that he take Mr. Hamilton into custody before he was able to get into another part of the house and possibly secure a weapon, so he released K-9 Hyde to apprehend Mr. Hamilton. (Williams Aff. ¶10).

29. K-9 Hyde caught Mr. Hamilton in the hallway leading to rooms deeper in the home. Mr. Hamilton went to the hallway floor as K-9 Hyde grabbed his left leg. (Williams Aff. ¶11).

30. Officer Williams observed Mr. Hamilton grab K-9 Hyde by the head to attempt to push the dog away, and Officer Williams did not believe Mr. Hamilton was surrendering or complying with his commands. Officer Williams observed that Mr. Hamilton was not complying with the officer's commands to Mr. Hamilton to lie on his stomach with his hands behind his back. (Williams Aff. ¶12-13).

31. After additional officers arrived, Officer King returned to what he believed to be the front door, which Officer King observed to be open, and he saw Officer Williams and his K-9 partner apprehending Mr. Hamilton in a narrow hallway near the front door of the residence. (King Aff. ¶7-8).

32. While the dog was holding the bite on Mr. Hamilton's leg, Officer Williams physically placed Mr. Hamilton on his stomach, moved his arms to a position behind his back and handcuffed him. He then removed K-9 Hyde by taking physical control of him and commanding him to release the bite and K-9 Hyde responded upon command and released Mr.

Hamilton's leg. (Williams Aff. ¶12-13).

33. Officer King then transported Mr. Hamilton to Lakeland Regional Medical Center for medical treatment for the dog bite. (King Aff. ¶9).

34. On the drive to Lakeland Regional Medical Center, Mr. Hamilton initially told Officer King he was not aware that police officers were approaching the residence and that he fled after seeing several people approaching. (King Aff. ¶10).

35. Officer King was present when Sergeant Parker read Mr. Hamilton his Miranda rights at Lakeland Regional Medical Center. (King Aff. ¶11).

36. After Mr. Hamilton was read his Miranda rights, Sergeant Parker interviewed Mr. Hamilton. (King Aff. ¶11).

37. During Sergeant Parker's interview with Mr. Hamilton at Lakeland Regional Medical Center, Mr. Hamilton admitted he was aware police officers were approaching him while he was outside the residence and that he fled into the residence. (King Aff. ¶11).

38. After Mr. Hamilton was medically cleared, Officer King transported him to Polk County Jail and transferred him to intake staff without incident. (King Aff. ¶12).

39. On April 19, 2016, Officers Williams and King did not have an arrest warrant for Mr. Hamilton. (Plaintiff's Second Amended Complaint; Affidavits of King and Williams).

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was served by U.S. Mail to Plaintiff, Rodrecius Antonio Hamilton, ID Number 365067, Hamilton Correctional Institution-Annex, 11419 S.W. County Road, #249, Jasper, Florida 32052-1360 on this 22d day of June, 2020.

/s/ Kristie Hatcher-Bolin
**MARK N. MILLER, ESQUIRE**

Florida Bar No. 239216
mark.miller@gray-robinson.com
karen.pollard@gray-robinson.com
**KRISTIE HATCHER-BOLIN, ESQUIRE**
Florida Bar No. 521388
kristie.hatcher-bolin@gray-robinson.com
linda.august@gray-robinson.com
Post Office Box 3
Lakeland, Florida 33802-0003
Telephone: (863) 284-2251
Facsimile: (863) 683-7462
- and -
**CRAIG F. NOVICK, ESQUIRE**
Florida Bar No.: 0026656
Suite 1400, 301 East Pine Street
Post Office Box 3068
Orlando, Florida 32802-3068
Telephone: 407-843-8880
Facsimile: 407-244-5690
Craig.Novick@gray-robinson.com
Chantal.Mccoy@gray-robinson.com
Attorneys for Defendants



# GRAY|ROBINSON
### ATTORNEYS AT LAW

ONE LAKE MORTON DRIVE
POST OFFICE BOX 3 (33802-0003)
LAKELAND, FLORIDA 33801
TEL 863-284-2200
FAX 863-688-0310

BOCA RATON
FORT LAUDERDALE
FORT MYERS
GAINESVILLE
JACKSONVILLE
KEY WEST
LAKELAND
MELBOURNE
MIAMI
NAPLES
ORLANDO
TALLAHASSEE
TAMPA
WASHINGTON, DC
WEST PALM BEACH

Kristie Hatcher-Bolin
The Florida Bar Board Certified in Appellate Practice
863-284-2251
KRISTIE.HATCHER-BOLIN@GRAY-ROBINSON.COM

May 21, 2020

Rodrecius Antonio Hamilton 365067
Hamilton Correctional Institution-Annex
11419 S.W. County Road #249
Jasper, Florida 32052-3735

Re:  Rodrecius Antonio Hamilton v. Officer Jeremy Williams, et al.
     Client-Matter No. 4120287-119

Dear Mr. Hamilton:

Enclosed please find a draft of Defendants' proposed Statement of Undisputed Facts for purposes of Defendants' Motion for Summary Judgment, which statement is based on the police reports previously produced to you. While we are still working on the statement, we are providing this to you in advance pursuant to Judge Jung's procedures for Motions for Summary Judgment. We are required to confer and attempt to narrow down the issues in the Statement of Undisputed Facts.

Please let us know if you object to the proposed Statement of Undisputed Facts, and if you do, please let us know specifically which paragraphs you object to no later than May 29, 2020.

Furthermore, we are seeking a short, 10-day extension of the summary judgment deadline from June 1, 2020 to June 10, 2020. Please advise if you object to that short extension of time no later than May 29, 2020.

Thank you for your attention to this matter.

Sincerely,
*Kristie Hatcher-Bolin*
Signed in absence to avoid delay

Kristie Hatcher-Bolin

KHB/la
Enclosure
cc:  City of Lakeland
/4120287/119#41100277 v1


EXHIBIT A

www.gray-robinson.com

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RODRECIUS ANTONIO HAMILTON,

    Plaintiff,

CASE NO.: 8:18-cv-885-T-02TGW

v.

OFFICER JEREMY WILLIAMS, OFFICER JUSTIN KING, AND OFFICER JOEL MAILLY,

    Defendants.
_____/

## STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Jeremy Williams, Justin King, and Joel Mailly, by and through their undersigned attorneys, submit the following Statement of Undisputed Facts in Support of their Motion for Summary Judgment:

1. On April 19, 2016, Officer Joel Mailly was working as a station duty officer for the City of Lakeland and was working at the Lakeland Police Department. On that day, Officer Mailly made contact with David Rogers, who reported a battery that occurred on the prior day, April 18, 2016.

2. Mr. Rogers reported to Officer Mailly that on April 18, 2016, he accompanied a friend to 3104 Florida Avenue North, Lakeland, Florida 33805, where Rodrecius Hamilton was living at the time.

3. Mr. Rogers reported to Officer Mailly that while he was at the residence at 3104 Florida Avenue North, he had an argument with Mr. Hamilton, that Mr. Hamilton placed him in

1

a headlock, and that Mr. Hamilton repeatedly struck him in the face with a closed fist.

4. During Mr. Rogers's visit to the Lakeland Police Department on April 19, 2016, Officer Mailly observed swelling and redness around Mr. Roger's right eye, which was almost swollen shut, and that both of Mr. Rogers's eyes were bloodshot.

5. Mr. Rogers completed a sworn written statement in reference to the incident.

6. Officer Harvey arrived at the Lakeland Police Department and took photographs of Mr. Rogers' face and Officer Mailly placed the photos into evidence.

7. Officer Mailly was not present when Mr. Hamilton was apprehended by Lakeland Police Officers Jeremy Williams and Justin King on April 19, 2016.

8. On April 19, 2016, Officer Jeremy Williams was working as a police officer for the City of Lakeland with his K-9 partner, Hyde.

9. On April 19, 2016, Officer Justin King was also working as a police officer for the City of Lakeland.

10. Officer Williams and Officer King were asked to respond to 3104 Florida Avenue North, Lakeland, Florida 33805 to assist in locating Rodrecius A. Hamilton, the suspect in the battery reported by David Rogers.

11. Prior to approaching the residence at 3104 Florida Avenue North, Lakeland, Florida 33805, Officer King conducted a search of Mr. Hamilton in DAVID to familiarize himself with Mr. Hamilton's appearance.

12. Before Officer Williams responded to the incident scene, he reviewed Mr. Hamilton's criminal history and from that review understood that Mr. Hamilton had prior convictions for battery and other charges involving violence. He also searched the NCIC/FCIC (National Crime Information Center/Florida Crime Information Center) databases, which

identified Mr. Hamilton as a violent offender and "possibly armed and dangerous."

13. Based on Mr. Hamilton's prior criminal history, including prior convictions on battery charges, it was Officer Williams's understanding that the battery being investigated would be charged as a third degree felony battery based on Mr. Hamilton's prior battery convictions.

14. Officer Williams was also involved with Officer Joel Mailly and the Winter Haven Police Department previously in arresting Mr. Hamilton for sexual battery charges. During that prior arrest for sexual battery, he was made aware of Mr. Hamilton's criminal history.

15. When the officers approached the residence, they were wearing their department-issued police uniforms.

16. When Officer Williams approached the residence, he noticed several dog kennels and barking dogs at the rear of the residence.

17. As he approached the residence, Officer Williams also saw the suspect, Rodrecius A. Hamilton, open the door, walk outside, and look toward the dog kennels.

18. Officer King also observed a man matching Mr. Hamilton's description exit what Officer King believed to be the front door of the residence.

19. Officer Williams yelled at Mr. Hamilton to stop and to come towards him. At that time, Officer Williams estimated Mr. Hamilton was approximately 20 feet away from him.

20. Officer Williams observed Mr. Hamilton stop and look towards him and the other two officers with him.

21. After Officer Williams announced himself as a police officer, he saw Mr. Hamilton turn and run back inside the residence.

22.  Officer King also observed Mr. Hamilton make eye contact with the officers present and then flee into the residence. Officer King then ran to what he believed to be the rear of the residence to ensure Mr. Hamilton did not attempt to flee through a back door.

23.  Officer Williams ran after Mr. Hamilton.

24.  As Officer Williams reached the door and proceeded after Mr. Hamilton, the door was pushed back on Officer Williams so Officer Williams kicked the door and it came open.

25.  Officer Williams saw Mr. Hamilton inside and told him to stop and come to the officer. Officer Williams warned that he would release the dog if Mr. Hamilton did not stop and come to him, but Officer Williams observed Mr. Hamilton move back towards a hallway. Officer Williams did not observe any indication that Mr. Hamilton was surrendering.

26.  Officer Williams observed Mr. Hamilton continue down the hallway, and Officer Williams believed Mr. Hamilton was stalling for time so he could determine how to escape.

27.  Officer Williams had not searched or secured Mr. Hamilton, and Officer Williams had not searched the house, so he did not know if there were weapons Mr. Hamilton could access.

28.  Officer Williams also considered Mr. Hamilton's criminal history, including convictions for crimes involving violence, and Officer Williams felt it was imperative that he take Mr. Hamilton into custody before he was able to get into another part of the house and possibly secure a weapon, so he released K-9 Hyde to apprehend Mr. Hamilton.

29.  K-9 Hyde caught Mr. Hamilton in the hallway leading to rooms deeper in the home. Mr. Hamilton went to the hallway floor as K-9 Hyde grabbed his left leg.

30.  Officer Williams observed Mr. Hamilton grab K-9 Hyde by the head to attempt to push the dog away, and Officer Williams did not believe Mr. Hamilton was surrendering or

complying with his commands. Officer Williams observed that Mr. Hamilton was not complying with the officer's commands to Mr. Hamilton to lie on his stomach with his hands behind his back.

31. After additional officers arrived, Officer King returned to what he believed to be the front door, which Officer King observed to be open, and he saw Officer Williams and his K-9 partner apprehending Mr. Hamilton in a narrow hallway near the front door of the residence.

32. While the dog was holding the bite on Mr. Hamilton's leg, Officer Williams physically placed Mr. Hamilton on his stomach, moved his arms to a position behind his back and handcuffed him. He then removed K-9 Hyde by taking physical control of him and commanding him to release the bite and K-9 Hyde responded upon command and released Mr. Hamilton's leg.

33. Officer King then transported Mr. Hamilton to Lakeland Regional Medical Center for medical treatment for the dog bite.

34. On the drive to Lakeland Regional Medical Center, Mr. Hamilton initially told Officer King he was not aware that police officers were approaching the residence and that he fled after seeing several people approaching.

35. Officer King was present when Sergeant Parker read Mr. Hamilton his Miranda rights at Lakeland Regional Medical Center.

36. After Mr. Hamilton was read his Miranda rights, Sergeant Parker interviewed Mr. Hamilton.

37. During Sergeant Parker's interview with Mr. Hamilton at Lakeland Regional Medical Center, Mr. Hamilton admitted he was aware police officers were approaching him while he was outside the residence and that he fled into the residence.

38. After Mr. Hamilton was medically cleared, Officer King transported him to Polk County Jail and transferred him to intake staff without incident.

39. On April 19, 2016, Officers Williams and King did not have an arrest warrant for Mr. Hamilton.

### CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was served by U.S. Mail to Plaintiff, Rodrecius Antonio Hamilton, ID Number 365067, Hamilton Correctional Institution-Annex, 11419 S.W. County Road, #249, Jasper, Florida 32052-1360 on this ___ day of May, 2020.

/s/ Kristie Hatcher-Bolin
**MARK N. MILLER, ESQUIRE**
Florida Bar No. 239216
mark.miller@gray-robinson.com
karen.pollard@gray-robinson.com
**KRISTIE HATCHER-BOLIN, ESQUIRE**
Florida Bar No. 521388
kristie.hatcher-bolin@gray-robinson.com
linda.august@gray-robinson.com
Post Office Box 3
Lakeland, Florida 33802-0003
Telephone: (863) 284-2251
Facsimile: (863) 683-7462
- and -
**CRAIG F. NOVICK, ESQUIRE**
Florida Bar No.: 0026656
Suite 1400, 301 East Pine Street
Post Office Box 3068
Orlando, Florida 32802-3068
Telephone: 407-843-8880
Facsimile: 407-244-5690
Craig.Novick@gray-robinson.com
Chantal.Mccoy@gray-robinson.com
Attorneys for Defendants