# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

RODRECIUS ANTONIO HAMILTON,

    Plaintiff,

v.                                    Case No. 8:18-cv-885-T-02TGW

JEREMY WILLIAMS, JOEL MAILLY,
and JUSTIN KING,

    Defendants.

_____/

## ORDER GRANTING DEFENDANTS' UNOPPOSED MOTION FOR SUMMARY JUDGMENT

This cause comes before the Court on the Defendants' Motion for Summary Judgment. Dkt. 65. Plaintiff did not respond in accordance with court rules, despite being ordered by the Court to do so.[1] Dkt. 69. After reviewing Defendants' submissions, including the Statement of Undisputed Material Facts and accompanying exhibits, Dkt. 66, the Court grants Defendants' motion. In granting this motion, the Court denies as moot Defendants' outstanding Motion for Sanctions, Dkt. 61.

---

[1] It is the law in the Eleventh Circuit that Federal Rule of Civil Procedure 56 requires the Court, even when a motion for summary judgment is unopposed, to consider the evidence submitted by the moving party and determine that the moving party has established a right to relief as a matter of law and that no general dispute of material fact exists before the Court can award summary judgment. *Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004).

I.  **BACKGROUND**

This matter is before the Court on Plaintiff's Second Amended Complaint for Violation of Civil Rights. Dkt. 17. Plaintiff, Rodrecius Hamilton, asserts claims against the Defendants under 42 U.S.C. § 1983 for the violation of his Fourth Amendment rights.[2] Hamilton alleges that Defendants Jeremy Williams, Joel Mailly, and Justin King, all police officers with the Lakeland Police Department, unlawfully entered his residence, arrested him without a warrant, and used excessive force in effecting his arrest. Defendants move for summary judgment based on qualified immunity.

II.  **STATEMENT OF UNDISPUTED MATERIAL FACTS[3]**

On April 19, 2016, David Rogers, an acquaintance of Hamilton, filed an in-person report with the Lakeland Police Department, claiming that Hamilton punched him repeatedly in the face following a dispute the day before at Hamilton's residence. Dkt. 65-2 at 2. Defendant Mailly, the station duty officer who received the report, took photographs of Rogers's face to document the swelling around his right eye and had Rogers provide a sworn statement detailing the incident. *Id.* at 2.

---

[2] Hamilton also raises a Fourteenth Amendment claim. But as explained in the Court's previous order denying Defendants' Motion to Dismiss, this claim is duplicative of Hamilton's Fourth Amendment claims and thus not a discrete claim subject to separate analysis. Dkt. 36.

[3] Because Hamilton has failed to respond or file his own statement of facts, the Court will consider Defendants' Statement of Material Facts to be undisputed for the purposes of deciding this motion. *See* Fed. R. Civ. P. 56(e).

Later that day, Defendants Williams and King were asked to respond to Hamilton's residence to locate him in reference to the battery complaint. Dkt. 65-3 at 1. They were asked to assist because of Hamilton's extensive and violent criminal record, which included charges for armed robbery, aggravated battery with a deadly weapon, and battery on a law enforcement officer. *Id.* at 1. Before responding, Defendant Williams also reviewed the national and state crime databases, which confirmed that Hamilton was indeed a violent offender and "possibly armed and dangerous."[4] *Id.* at 1–2.

Defendants King and Williams, as well as Williams's canine partner, responded to Hamilton's address, wearing their department-issued uniforms. Dkt. 65-3 at 1–2; Dkt. 65-4 at 2. As they approached the residence, Hamilton walked out the front door to attend to the dog kennels in the yard. Dkt. 65-3 at 2. Standing about twenty feet away, Defendant Williams yelled at Hamilton to "stop" and to come toward him. *Id.* Upon hearing these commands, Hamilton froze and looked at Defendants Williams and King. Dkt. 65-3 at 2; Dkt. 65-4 at 2. Defendant Williams proceeded to announce himself as a police officer. Dkt. 65-3 at 2. In response, Hamilton turned and ran back into his residence. Dkt. 65-3 at 2; Dkt. 65-4 at 2.

---

[4] On July 20, 2017, after this incident, Hamilton was sentenced to 25 years in Florida State Prison for sexual battery. Florida Department of Corrections, http://www.dc.state.fl.us/offenderSearch/detail.aspx?Page=Detail&DCNumber=365067&TypeSearch=AI (last visited Aug. 26, 2020).

Defendant Williams ran to the front door, while Defendant King ran to the rear of the house to cut off any potential avenue for escape. Dkt. 65-3 at 2; Dkt. 65-4 at 2. As Defendant Williams tried to enter the house, Hamilton pushed the door back on him, so Williams kicked the door open. Dkt. 65-3 at 2.

Once inside the house, Defendant Williams again shouted for Hamilton to stop and to come to him and warned that he would release the canine if Hamilton did not comply. *Id.* Hamilton again ignored these commands. *Id.* at 3. Showing no signs that he intended to surrender, Hamilton continued to walk backward down a hallway further into the house, while yelling back at Williams. *Id.* at 2–3. At that point, Defendant Williams, not having searched the house and with Hamilton's criminal history in mind, released the canine to subdue Hamilton before he could obtain a weapon. *Id.* at 3. The canine sprinted down the hall and grabbed Hamilton by the left leg, taking him to the ground. *Id.*

As Defendant Williams approached Hamilton, he was grabbing the canine by the head trying to push the dog away. Dkt. 65-3 at 3. Defendant Williams directed Hamilton to lay on his stomach and place his hands behind his back. *Id.* Hamilton did not comply. *Id.* Defendant Williams then placed Hamilton facedown and handcuffed him, and the canine released Hamilton's leg. *Id.*

Defendant King transported Hamilton to the hospital where he was treated for an injury to his left index finger and abrasions and puncture wounds to both

4

legs resulting from dog bites. Dkt. 65-4 at 2; Dkt. 65-6 at 1–2. The bite wounds were cleaned and closed with Steri-Strips. Dkt. 65-6 at 3. Hamilton was then medically cleared and transported to the Polk County Jail. Dkt. 65-4 at 2.

## III.  LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). In determining whether a genuine dispute of material fact exists, the Court must view the evidence and draw all factual inferences therefrom in a light most favorable to the non-moving party and must resolve all reasonable doubts in the non-moving party's favor. *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007). Summary judgment should then be granted only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV.  DISCUSSION

The Defendants assert qualified immunity as to Hamilton's claims that the warrantless entry into his home and the excessive use of force in securing his arrest violated the Fourth Amendment. The doctrine of qualified immunity protects

agents of the government "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

To be entitled to qualified immunity, the Defendants must first establish that they were acting under discretionary authority—that the actions they undertook were of the type that fell within their job responsibilities. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). This is easily established here. The Defendants, by investigating a criminal complaint and making an arrest, were carrying out quintessential law enforcement duties and thereby exercising discretionary authority. *See Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). Thus, the burden shifts to Hamilton to prove that the Defendants are not entitled to qualified immunity by showing that: (1) the Defendants violated his Fourth Amendment rights, and (2) the rights violated were clearly established at the time of the Defendants' alleged misconduct. *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014). Hamilton must satisfy both requirements. If he fails to establish a constitutional violation, that is the end of the inquiry and the Defendants are entitled to qualified immunity. *See Pearson*, 555 U.S. at 232.

At the outset, the Court finds no constitutional violation on the part of Defendants Mailly and King. Neither officer directly participated in Hamilton's

arrest or engaged in the use of force, much less excessive force. Defendant Mailly was not at the scene of the arrest, and Defendant King was involved only in transporting Hamilton following his arrest. As a result, both officers are entitled to summary judgment.

This leaves the Court to consider only the actions of Defendant Williams. In doing so, the Court need consider only the first prong of the qualified immunity standard because the unrefuted evidence establishes that Defendant Williams did not violate the Fourth Amendment.

A. The warrantless entry and arrest did not violate the Fourth Amendment.

Defendant Williams claims that his warrantless entry and subsequent arrest of Hamilton were constitutionally permissible according to the exigent circumstances exception to the Fourth Amendment's warrant requirement. The Court agrees.

It is a basic principle of Fourth Amendment law that warrantless searches or seizures executed inside a home are presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 585–86 (1980). Even so, the Constitution allows for a limited exception to this general prohibition where the "arresting officer had probable cause to make the arrest *and* . . . exigent circumstances demand[ed] that the officer enter the home without a warrant." *Bashir v. Rockdale Cnty., GA.*, 445 F.3d 1323, 1328 (11th Cir. 2006).

Exigent circumstances are those "compelling need for official action" and that leave "no time to secure a warrant." *United States v. Holloway*, 290 F.3d 1331, 1334 (11th Cir. 2002) (quoting *Michigan v. Tyler*, 436 U.S. 499, 509 (1978)). These may include "hot pursuit of a suspect, risk of removal or destruction of evidence, and danger to the arresting officers or the public." *Bates v. Harvey*, 518 F.3d 1233, 1245 (11th Cir. 2008). In determining whether an exigency existed at the time a warrantless entry was made, the Court "looks to the totality of circumstances." *Missouri v. McNeely*, 569 U.S. 141, 149 (2013).

Here, both articulable probable cause and exigent circumstances were present to justify the warrantless entry and arrest. There was probable cause to arrest Hamilton for battery based on the in-person police report made the day before. There were exigent circumstances because it was reasonable for Defendant Williams to conclude that he was in imminent danger of suffering serious bodily harm. As soon as Hamilton saw the officers and they identified themselves, he ran into an unsecured house. This put the Defendants in a precarious position because at that point it was possible that Hamilton was armed or preparing to arm himself, particularly when considering his violent criminal history and the crime database warnings. Under these circumstances, Defendant Williams's decision to enter the house and subdue Hamilton to protect himself and Defendant King from a

potential armed threat was a reasonable one. This decision did not violate the Fourth Amendment.

    B.  <u>Defendant Williams did not use excessive force in arresting Hamilton.</u>

Hamilton alleges that Defendant Williams used excessive force in arresting him by siccing a police dog on him and kicking him multiple times in the ribs and legs. Dkt. 17 at 7. The Fourth Amendment prohibits police officers from using excessive force when making an arrest. *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002). Whether the force used to make an arrest is excessive is an objective reasonableness inquiry that considers the "totality of the circumstances" surrounding the arrest, *Plumhoff*, 572 U.S. at 774, and is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

In assessing the reasonableness of an officer's use of force, the Court considers the so-called *Graham* factors: "(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Fils v. City of Aventura*, 647 F.3d 1272, 1288 (11th Cir. 2011). Applying these factors here, the Court finds that Defendant Williams did not use excessive force in making the arrest.

First, the unrefuted affidavits of the officers establish that Defendant Williams never kicked Hamilton in the legs or ribs. The only suggestion to the contrary can be found in the allegations of the unverified Second Amended Complaint, which Hamilton cannot rely on as evidence to rebut the sworn affidavits of the officers. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Moreover, there were no blunt force injuries to Hamilton's ribs or legs documented in his medical records. The only documented injuries were from dog bites.

The use of the canine to subdue Hamilton also was not an excessive use of force under the circumstances. Although the crime Hamilton was being arrested for (simple battery) was not all that severe, the remaining *Graham* factors tilt in Williams's favor. Hamilton fled immediately when the officers announced themselves as police officers and actively resisted all Defendant Williams's commands to surrender. And as explained above, Hamilton's presence in an unsecured house endangered the safety of the officers on scene, especially when considering his violent criminal history. It was thus reasonable for Defendant Williams to release the canine to neutralize quickly what he perceived to be a potential armed threat. This choice was the type of split-second decision officers are repeatedly confronted with in the field and that the Court in *Graham* warned against second-guessing. *See Graham*, 490 U.S. at 396–97. Likewise, the Court

will not second-guess Defendant Williams here. *See, e.g.*, *Edwards v. Shanley*, 666 F.3d 1289, 1295–97 (11th Cir. 2012) (finding officer's "split-second" decision to release canine to track and initially subdue suspect fleeing on foot from scene of minor traffic offense was reasonable under the circumstances).

## V.   CONCLUSION

The Defendants did not violate Plaintiff's Fourth Amendment rights, and the Motion for Summary Judgment is GRANTED. The Clerk is directed to close the case.

**DONE AND ORDERED** at Tampa, Florida, on August 26, 2019.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record
Plaintiff, pro se